ANNA T. E. KIRTLAND, PLAINTIFF IN CERTIORARI, v. LOUIS McCLOUD ET AL., DEFENDANTS IN CERTIORARI.

Argued November 3, 1909—Decided January 13, 1910.

1. Where a landowner, who has been assessed for benefits derived from a public improvement, has had notice of the time and place when and where the confirmation of the assessment will be considered, and attends and presents his objections, and the further consideration of the report is postponed to a time and place of which he has notice, and he refuses or neglects to attend, the report may be subsequently confirmed without further notice to him.
2. The city of East Orange is vested with the power of laying sidewalks along its streets except where the Essex county park commission have laid out a public highway, or where the commission have, by changes in grade or other public improvement, made it necessary that the sidewalk be relaid; in that case it must be done by the park commission. It not appearing that any change was made in a street by the commission which made it necessary to relay a sidewalk on a street not opened or laid out by the commission—*Held*, that the city could order the improvement and assess for benefits.

---

On *certiorari.*

For the prosecutor, *Woodbridge & March.*

For the defendants, *Jerome D. Gedney.*

The opinion of the court was delivered by

BERGEN, J.  The city of East Orange caused a sidewalk to be laid along the property of the prosecutor fronting on Park avenue, and an assessment to be levied on her property for benefits to it because of such improvement.

This writ challenges the validity of the assessment, and numerous reasons have been presented in support of the writ, but most of them relate to want of authority to make the improvement and the validity of the proceedings laying the assessment.

The first reason assigned is that after prosecutor's objections were made to the confirmation of the assessment to the common council on August 12th, 1907, it postponed the further consideration of the confirmation for two weeks, and on the adjourned day, at which time the prosecutor did not appear, the consideration of the matter was further postponed for two weeks, which would make the last adjourned day September 9th, and that on the 23d of September the report was duly considered and confirmed, although the minutes of the council do not show any meeting September 9th, or postponement from that date to September 23d, and the prosecutor urges that as it does not appear that any action was taken September 9th continuing the consideration of the report from September 9th to September 23d, or that any notice was given prosecutor of such action, council lost jurisdiction, and was without lawful authority to proceed on that day.

The city of East Orange is incorporated under an act entitled "An act for the incorporation of cities, and providing for their officers, government and powers," approved March 24th, 1899 (*Pamph. L., p.* 283), and the proceedings under consideration are provided for in section 70 of a supplement to this act (*Pamph. L.* 1901, *p.* 142), which declares that the commissioners of assessment shall determine the cost of the improvement and assess the same upon the lands benefited, to the extent of such benefit; that they shall then file their report with the city clerk, who shall, ten days prior to confirmation by city council, mail a notice to all persons interested, which notice shall state that the report is on file, and

also the day common council will consider any objections thereto. All this was done, and the sufficiency of the notice seems to be within the rule laid down by the Court of Errors and Appeals in *Wilson* v. *Karle,* 13 *Vroom* 612. . In addition to this the prosecutor attended on the day fixed, August 12th, and stated her objections. The statute does not require that the council at once determine the question, and we cannot see how the prosecutor was injured for want of notice of subsequent meetings held for the purpose of considering the force of her objections, and finally determining the matter. The prosecutor had been heard, and that she had made all the objections desired is manifested by the fact that she did not appear on the first adjourned day, of which she had notice, and in the absence of any explanation of her absence, it is fair to assume that she had nothing further to offer in opposition to the confirmation. If she had been misled by any action of the council on the day fixed for hearing objections, as in *Beach* v. *Jersey City,* 42 *Id.* 87, where the report was referred to the commissioners for further consideration and report, a different case would be presented, but in this case further hearing on the report, to which prosecutor had objected, was continued to another day, of which she had notice and declined to appear, she was not therefore deprived of her opportunity to be heard on the original report. The assessment ought not to be set aside for this reason.

The next point urged is that the city was without jurisdiction to "make the improvement under review on Park avenue at the point where, and at the time when, the same was begun." The following is the situation upon which this proposition is rested. In 1870 a supplement to an act entitled "An act constituting a public road board for the laying out, constructing, appropriating, improving and maintaining public carriage roads in the county of Essex," was approved. *Pamph. L., p.* 181. The first section of this act empowered "The Essex Public Road Board" to lay out, construct, appropriate, improve and maintain for the purpose of free carriage roads in the county of Essex, certain streets and avenues named, among them being Park avenue. Whether Park avenue was laid out

by this act, or whether it having been previously laid out, was appropriated, does not appear by the record, but the presumption is that it was then in existence, because its description as contained in the act is not sufficiently definite to answer the requirements necessary to lay out a public highway, but it is sufficient to describe a highway already in existence.

In 1895 (*Pamph. L., p.* 169) an act was approved, entitled "An act to establish public parks in certain counties in this state, and to regulate the same." This act provides for the appointment of a board of commissioners to be known as the county park commission of any county voting to make the law effective therein. The county of Essex voted to accept the law, and thereafter a commission was appointed known as "The Essex County Park Commission." The second section of this act confers upon the commission power to acquire, maintain and make available to the inhabitants of the county and to the public, parks and open spaces for public resort and recreation, to locate such public parks and places with power for these purposes to take by purchase, gift or condemnation necessary lands, and making it the duty of such board to preserve, care for, lay out and improve any such tracts and public places with the power to connect any road, park or public open space with any other park or public open space, or with any city or municipality of said county, by a suitable roadway or boulevard, with the right to acquire necessary lands for that purpose; "provided, however, that the concurrence of the common council or other body having authority over highways shall be necessary to take or appropriate any portion of an existing street or road." Section 6 of this act empowers the board not only to lay out and open roadways, parkways and boulevards as aforesaid, but also to establish the grade of *such* highway and change and alter the same, to grade, curb, flag, pave and otherwise improve the said parkways, roadways and boulevards, and to regulate the use thereof. This section, it will be observed, limits the power of grading and curbing to *such* roadways as the board may lay out and open, and Park avenue has not been shown to be within that class.

Section 18 provides that any city having control of the parks or streets therein may transfer "the care, custody and control of any park, public place or street under its care or control to the said board of park commissioners for the purposes of this act." As authorized by this section, the township committee of East Orange, prior to its incorporation as a city, transferred, by ordinance, to the Essex County Park Commission "the care, custody and control of Park avenue * * * to the extent and for the purposes permitted and required by the act of 1895." The board of chosen freeholders of the county of Essex, the successors of the Essex county road board, transferred to the park commission the care, custody and control of Park avenue, "and all rights in, and control over, said avenue which the board of chosen freeholders of the county of Essex now has."

The care, custody and control which the board of chosen freeholders of the county of Essex transferred was such as resided in the public road board under the act of 1870 (*Pamph. L., p.* 181, § 4), which requires the road board to "relay in their proper place, and so as to conform to the board's plans, all curbing and flagging that they shall take up in constructing said avenues, but the local authorities are to curb and flag the other sidewalks which it shall be proper to curb and flag as the said several municipalities are now authorized to do with reference to said sidewalk, and to keep the same in repair." This act, therefore, did not deprive East Orange of its right to curb and flag the sidewalk under consideration, nor was that power interfered with by the action of the board of chosen freeholders. *Carroll* v. *Irvington,* 21 *Vroom* 361. It yet remains to be considered what was the effect of the action of the township of East Orange in transferring the care, custody and control of Park avenue to the park commission. The ordinance, by its terms, limits the transfer to "the extent and for the purpose permitted and required by the act of 1895." *Pamph. L., p.* 169. This act, as above set out, permits the park commission to acquire, maintain and make available public parks, with power to acquire property therefor, and to preserve and care for, lay

out and improve such parks, and to connect any road or park with any other park or public open space, or with any municipality of the county by suitable roadway or boulevard therein, whether such lands or any part thereof be already a street, and to maintain, across and upon the same, roadways, parkways or boulevards, and provides the machinery for acquiring land by condemnation for such purpose, and the awarding of damages, and an assessment for benefits. Section 6 then provides that the board shall have power not only to lay out and open roadways, parkways and boulevards, connecting parks and open spaces as provided in the act, but confers authority to establish the grade of such highways and change and alter the same, "to grade, flag, pave and otherwise improve the *said* highways, roadways and boulevards, and to regulate the use thereof." This is the only power to curb and flag which the act confers, and it is manifestly limited to highways which the board shall lay out and open or improve, so that it would seem, it not appearing that they laid out or opened Park avenue, or that they had changed the grade or otherwise improved Park avenue in such manner as to require the relaying or recurbing along the section of Park avenue upon which the prosecutor's land bounds, that it was not within the authority of the park commission to lay or flag or put in the curbing for which the assessment in controversy was laid, and that the common council of East Orange, under the act of 1899 (*Pamph. L.,* p. 309, § 62), has the power to grade, flag or curb Park avenue along prosecutor's property.

We think that the care, custody and control which the ordinance of the township of East Orange conferred upon the park commission is limited to the management and regulation thereof until the park commission has, by some action, permitted and authorized by the act of 1895, appropriated the avenue, and that the park commission is not required to curb or flag the avenue until, by some improvement made by the commission, it becomes necessary to have the curbing and flagging relaid, and that under the record in this case

the power to curb and flag Park avenue along the prosecutor's property is within the jurisdiction of the city of East Orange.

The next point raised is that the petition for the improvement was signed by one owner, while the statute uses the expression, "By the owners," and *State, Pope, prosecutor,* v. *Union,* 3 *Vroom* 343, is cited in support of this objection. In that case the law authorized an improvement "on the application, in writing, * * * by some of the owners of the lands over which such improvements shall pass," and it was held that an application signed by a single property owner was not sufficient, because the act required it to be made by *some* of the owners. Aside from the question of laches in this case, the prosecutor having stood by while the improvement was being made, and only complained after it was completed, there is a radical difference between the case cited and the present one, for in the former case the application was only required to be signed by some of the owners, while in the present case there is an added qualification, and that is that the petition must be signed by the owners "of one-sixth of the lands fronting on the line of the proposed improvement." This petition was so signed, for the person signing was the owner of one-sixth of the lands. It was not required to be signed by some of the owners, but by owners of one-sixth of the lands fronting on the improvement, and we have no doubt that if the petition be signed by one who owned the requisite amount of land, it is sufficient.

The next point made is that the board of education of the city of East Orange, by whom alone the petition was signed, was not an owner within the meaning of the act, the argument being that while the title was vested in the board of education, it holds the same for the benefit of the city as a part of the city government; that it cannot raise money without the co-operation of the city government, and it is not subject to taxation. Without discussing this question, it is sufficient to say that prosecutor should have acted promptly and not stood by without protest until the improvement had been made.

The next objection urged is that the power of the city council was limited to the improvement called for by the petition.

This objection is also subject to the charge of laches. The point made, however, is this, that although the petition and ordinance providing for the work covers the northerly side of Park avenue between Prospect street and North Clinton street, the city was only called upon to lay the sidewalk in front of the prosecutor's property, and of the owners other than the board of education, because the board of education, on its own motion, and at its own expense, made the improvement in front of its property, as required by the ordinance. We fail to see how the prosecutor was injured by this, because she is assessed for benefits to her property, and there is not sufficient proof in the case showing that the assessment exceeded the benefits which her property received.

The next point made is that no notice of the assessment or of the application for its confirmation was given to the prosecutor. The minutes of the common council show that the clerk mailed a notice to all of the owners of the day fixed for the consideration of the question of confirmation, and that at the time fixed the prosecutor was present through her authorized representative and interposed objections. This, we think, sufficiently establishes the fact that notice was given.

It is further urged that the assessments were not made in accordance with benefits received. This objection is based upon the following conditions. All that part of the prosecutor's property which fronts on the improvement except a space of sufficient width for a carriageway leading from Park avenue to the property, is separated from the sidewalk by a high stone wall so that, except at the carriage entrance, there is no way of entering the property from the street; that the commissioners of assessment adopted a uniform rate in assessing the benefits, of $1.16 per lineal foot, and the claim is that if that was a proper assessment as to the width of the carriage entrance, then the balance of the frontage along which the stone wall ran was improperly assessed at the same rate because it could not be benefited to the same extent. It does not appear that the carriageway was assessed for benefits distinct from the whole, and the report of the assessment shows that it was made for the benefits which in the judgment of

the commissioners the whole property received. We find nothing in the case that would justify us in setting aside the assessment for the reasons urged.

We are therefore of opinion that the proceedings should be affirmed.